CABELL, P.
On the 10th of June 1846, in a suit depending in the Circuit court of the United States, for the county of Alexandria, in the District of Columbia, between the Bank of Potomac and others, complainants, and Bridget M’Laughlin and others, defendants, a decree was pronounced in favour of the complainants against the defendants, which, among other things, appointed Henry W. Davis and Charles H. Lee commissioners, to sell certain lands, and to apply the proceeds as directed by the said decree. From that decree, Bridget M’Laughlin obtained an appeal to the Supreme court of the United States, where the cause remained undecided, until the December term of the said Court, in the year 1848.
But before this time, the Commonwealth of Virginia, by an act passed February 3, 1846, had declared its willingness to accept the retrocession of the county of Alexandria, in the District of Columbia, when the same should be receded by the Congress of the United States; and the Congress of the United States, by an act passed July 9, 1846, entitled “ an act to retrocede the county of Alexandria, in the District of Columbia, to the State of Virginia,’’ had, in fact, retroceded to the State of Virginia, all that portion of the District of Columbia, which had been ceded to the United States, by the State of Virginia; and the General Assembly of this Commonwealth, by an act passed the 13th of March 1847, entitled “ an act to extend the jurisdiction of the Commonwealth of Virginia, over the county of Alexandria,” had declared that the territory thus retroceded and accepted, should constitute an integral part of the said Commonwealth, be subject to the public and general laws of the Commonwealth, and be erected into a new county, retaining the name of Alexandria, be an *611 nexed to the 3d judicial district, and form a component part of the 6th judicial circuit of this Commonwealth; and that a Circuit Superior court of law and chancery should be held therein twice a year, by the Judge of the 6th judicial circuit. The act farther directs, that all the judgments, decrees, orders and records of the late Circuit and Criminal courts of the District of Columbia, for Alexandria comity, shall be transferred to, and become the judgments, decrees, orders and records of the Circuit Superior court of law and chancery, for the county of Alexandria. The said act contains various other important provisions, which are not necessary now to be stated ; for although they may claim the deliberate attention of this Court, in the future progress of the cause, they do not bear on any question to be decided at this time.
The same remark applies to the act of Congress which passed the 5th of July 1848, entitled “an act supplemental to the act passed on the 9th day of July 1846, entitled ‘an act to retrocede the territory of Alexandria, in the District of Columbia, to the State of Virginia?” and it is referred to, now, solely for the purpose of completing the series of all the acts of the Legislature of Virginia, and of the Congress of the United States, on the subject of the retroceded territory.
At the December term of the Supreme court of the United States, in the year 1848, the cause of Bridget McLaughlin against the Bank of Potomac and others, on the appeal from the decree of the Circuit court of the United States for the county of Alexandria, in the District of Columbia, came on to be heard by the Supreme court of the United States, when the decree was affirmed with costs: and the cause was ordered to be remanded to the Circuit Superior court of law and chancery, for the county of Alexandria, in the State of Virginia. The Chief Justice of the United States issued his mandate, accordingly, directed to the Judge *612 of the Circuit Superior court of law and chancery for the county of Alexandria, in the State of Virginia, stating the judgment and decree of the Supreme court, and remanding the said cause to him, the said Judge of the said Circuit court, in order that such execution and proceedings might be had in the said cause, in conformity to the judgment and decree of the Supreme court above stated, as, according to right and justice, and the constitution and laws of the United States, ought to be had therein.
On the 15th of November 1849, the Bank of Potomac and others, plaintiffs in the suit against Bridget M’Laughlin and others, produced to the Circuit Superior court of law and chancery, for the county of Alexandria, in the State of Virginia, the mandate from the Supreme court of the United States, affirming the decree of the Circuit court of the District of Columbia, for the county of Alexandria, in the said cause, and moved the Court to receive and file the same; which motion was resisted by the defendants; but the Court received the said mandate, and ordered “ the same to be filed among the records of the Court, and be obeyed.”
On the 22d of December 1849, a Judge of this Court, on the petition of Bridget M’Laughlin, awarded her a writ of error and supersedeas to the said final order of the Judge of the said Circuit Superior court of law and chancery, on the condition of her giving bond and security in the penalty of 200 dollars, with condition according to law; which condition was complied with on the 2d January 1850, and the supersedeas was executed on the principal parties on the 3d and 4th of the same month.
Afterwards, on the petition of Bridget M’Laughlin, setting forth that, notwithstanding the award of the writ of error, and the service of the writ of supersedeas aforesaid, Henry W. Davis and Charles H. Lee, acting as commissioners, had actually made sale of certain pro *613 perty belonging to her, under the final order of the Circuit Superior court of law and chancery, for the county of Alexandria, in contempt of the authority of this Court, an order was made by this Court, that the said Davis and Lee, and Phineas Janney, president of the Bank of Potomac, who had participated in the sale, should shew cause, if any they can, why they should not be attached for their alleged contempt. They appeared by counsel, and admit that they have made the sale complained of, but solemnly disclaim all intention to act in opposition to the authority of this Court, and seek to justify their conduct, on the ground that the writ of error awarded by this Court, did not bring up for its consideration the correctness or incorrectness of the decree of the 10th June 1845, of the Circuit court for the county of Alexandria, in the District of Columbia ; and that they, as commissioners appointed under that decree, had still the right to execute it, by selling the property according to its directions: and their advertisement previous to the sale, shews that they claim to act under the authority of that decree.
Such are the facts of this case. The length of the statement, it is hoped, will be excused, because it is believed that it will supersede the necessity of much argument on the subject.
It is very true, as alleged by the defendants, that the writ of error awarded by this Court, did not bring up for its consideration the correctness or incorrectness of the decree of the 10th of June 1845, of the Circuit court of the District of Columbia. But it is not perceived how that fact can avail the defendants. What right have they now to execute that decree ? The force of the decree, and the powers of Davis and Lee under it, were suspended by the appeal which was awarded by the Supreme court of the United States; and long before that suspension was removed, all the powers of the Court which pronounced it, and even the Court it *614 self, had ceased to exist, in consequence of the retrocession of the county of Alexandria to the State of Virginia. And it would be a solecism in law, to assert that persons appointed by a Court to act as its commissioners, can exercise that authority, as commissioners of that Court, after the Court itself has been abolished or has ceased to exist. As well might an ordinary agent or attorney, constituted by a common power of attorney, claim the right to execute the power after the death of his principal. Moreover, the act of the General Assembly of Virginia, for extending the jurisdiction of the Commonwealth over the county of Alexandria, had transferred all the judgments, decrees, orders and records of the Circuit court of the District of Columbia, to the Circuit Superior court of law and chancery for the county of Alexandria, and made them the judgments, decrees, &c. of that Court. In addition to this, when the Supreme court of the United States affirmed the decree of the Circuit court of the District of Columbia, the mandate certifying its affirmance, and commanding its execution, was directed to the Circuit Superior court of law and chancery, for the county of Alexandria, in the State of Virginia. On what possible ground, then, can the claim of Davis, and Lee, to act as commissioners of the Circuit court of the District of Columbia, be supported? How far it might have been competent to them, as commissioner's of the Circuit Superior court of law and chancery for the county of Alexandria, to have made the sale of the property, if they had proceeded to do so, before the writ of error and supersedeas awarded by this Court, is a question which does not arise, and needs not now to be decided; for the sale was not made until after the supersedeas was served upon them. That supersedeas informed them, in terms too explicit and pointed to be misunderstood, that its object was to bring to the consideration of this Court, the question of the correctness or incorrectness of the order *615 of the Circuit Superor court of law and chancery, for the county of Alexandria, in registering and directing obedience to the mandate of the Supreme court, which commanded the execution of the decree of the Circuit court of the District of Columbia, as affirmed by the Supreme court of the United States; and it inhibited all proceedings on the said order, until the whole matter could be reviewed by this Court.
I am therefore of opinion, that the conduct of the defendants, although it is believed to be free from any intentional impropriety, is nevertheless, in itself, in direct opposition to, and in contempt of, the authority of this Court: and that, so far as it attempted to change the rights of the parties, it is merely null and void.
The rule must be made absolute.
The other Judges concurred in the opinion of the President.
Rule made absolute.